**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE CITY OF SHAKOPEE, MINNESOTA, | |
| *Plaintiff*, | |
| v. | CIVIL ACTION NO. _____ |
| THE UNITED STATES OF AMERICA, DIRK KEMPTHORNE, in his official capacity as Secretary of the Interior, U.S. Department of the Interior, and CARL J. ARTMAN, in his official capacity as Assistant Secretary for Indian Affairs, U.S. Department of the Interior, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| *Defendants.* | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

This action is based on federal laws governing the acquisition of land to be held in trust by the United States for Indian tribes and the environmental review that is required for such decisions.  Plaintiff is the City of Shakopee, Minnesota (City).  This municipal government seeks declaratory and injunctive relief prohibiting the Secretary of the United States Department of the Interior from taking land within the City in trust for the Shakopee Mdewakanton Sioux (Dakota) Community (SMSC).

The trust acquisition of the SMSC's requested land would result in the loss of the City's planning, zoning, and environmental regulatory controls over the land. Acquisition would also diminish the City's tax base at a time when governmental burdens are significantly increasing as a result of extensive and rapid regional growth which has resulted in the City's becoming the fastest growing city in the Minneapolis-St. Paul

region over the last six years. Scott County is now the fifth fastest-growing county in the country. If the land is taken into trust, the City will be unable to establish and implement well-developed land use controls and plans responsive to that growth. The Department's decision will disadvantage the City financially, result in adverse impacts on the environment, and harm the City's ability to plan for and accommodate future regional development, which is further being hampered by the SMSC's continuing trust land requests. Injunctive and declaratory relief is necessary to prevent harm to the City as a result of this proposed acquisition.

## I.     THE PARTIES

1.     Plaintiff the City of Shakopee is a municipal corporation organized and existing under the laws of the State of Minnesota. The City provides its residents with municipal services, such as parks and recreation programs, public safety, sanitary sewer, and municipal water. In addition to providing those services, the City is obligated under Minnesota law to regulate and control the use of land in the City. The City has regulatory and taxation jurisdiction over most of the land subject to the proposed trust acquisition.

2.     Defendant the United States serves as trustee for Indian tribes recognized under federal law, including the SMSC. The United States currently holds lands within the boundaries of the City in trust for the SMSC.

3.     Defendant Dirk Kempthorne, Secretary of the Interior (Secretary), operates, supervises, and manages Indian affairs, including acquiring land in trust pursuant to section 5 of the Indian Reorganization Act, 25 U.S.C. § 465 (IRA), and IRA implementing regulations, 25 C.F.R. Part 151. The Secretary is sued in his official capacity.

4.      Defendant Carl J. Artman, Assistant Secretary for Indian Affairs of the Department of the Interior (Assistant Secretary), shares responsibility with the Secretary for operating, supervising, and managing Indian affairs, including acquiring land in trust under the IRA.  The Assistant Secretary is sued in his official capacity

## II.      JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question), 25 U.S.C. § 465 (Indian Reorganization Act), 42 U.S.C. §§ 4321-4347 (the National Environmental Policy Act or NEPA), pursuant to 5 U.S.C. §§ 701-706 (Administrative Procedure Act or APA).  Plaintiffs seek declaratory relief under 28 U.S.C. § 2201 and injunctive relief under 28 U.S.C. § 2202.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## III.      BACKGROUND

## A.      TRIBAL TRUST LAND

7.      In 1934, Congress passed the IRA.  25 U.S.C. § 461 *et seq.*  "The intent and purpose of the Reorganization Act was 'to rehabilitate the Indian's economic life and to give him a chance to develop the initiative destroyed by a century of oppression and paternalism.'"  *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 152 (1973) (quoting H.R. Rep. No. 1804, 73d Cong., 2d Sess., at 6 (1934)).

8.      To that end, Congress enacted Section 5 of the Act "[t]o meet the needs of landless Indians . . . whose land holdings are insufficient for self-support . . . ."  S. Rep. No. 1080, 73d Cong., 2d Sess. 1 (1934).  Section 5 authorizes the Secretary of the Interior

to acquire land in trust for the benefit of Indians and Indian tribes. 25 U.S.C. § 465.

When land is acquired in trust, it becomes exempt from state and local taxation and

regulatory controls, including environmental and land use controls.

9.     The Secretary has promulgated regulations for implementing Section 5 of

the IRA. 25 C.F.R. Part 151. Section 151.10 sets forth standards to be considered in

evaluating trust acquisition requests. Among those factors are: (1) statutory limitations

on the Secretary's authority to take land in trust for the tribe involved; (2) the need of the

tribe for additional land; (3) the purposes for which the land will be used; (4) the impact

on the state and its political subdivisions resulting from the removal of the land from the

tax rolls; and (5) jurisdictional problems and potential conflicts of land use which may

arise. 25 C.F.R. § 151.10 (a), (b), (c), (e), and (f).

**B.     NEPA**

10.     Under NEPA and its implementing regulations, 40 C.F.R. Parts 1500 -

1508, agencies are required to take a "hard look" at the environmental impacts of

proposed actions, including the cumulative impacts associated with a proposed action, 40

C.F.R. §§ 1501.2, 1508.7. NEPA prohibits agencies from breaking down larger actions

and related actions into smaller pieces, because such segmentation improperly minimizes

the impacts of the proposed action, constrains the consideration of alternatives, and skews

agency decision-making in favor of proposed actions. 40 C.F.R. §§ 1508.7, 1508.25.

11.     For review of major federal actions significantly affecting the human

environment, NEPA requires preparation of an environmental impact statement (EIS). 42

U.S.C. § 4332(2)(C). An environmental assessment (EA) may be used to determine

whether an EIS is needed. 40 C.F.R. §§ 1501.4(a), (b). An EA must, itself, provide an

adequate assessment of cumulative effects.  40 C.F.R. § 1508.25.  If the agency

determines, after preparing an EA, that an EIS is not needed, it issues a finding of no

significant impact (FONSI), which becomes the basis for final agency action.  40 C.F.R.

§ 1501.4(e).  The agency must make the FONSI available to the public, as required by 40

C.F.R. § 1506.6.  40 C.F.R. § 1501.4(e)(1).

## C.    THE SHAKOPEE MDEWAKANTON SIOUX COMMMUNITY (SMSC)

12.    The SMSC is a federally-recognized Indian tribe with approximately 392

members.  Tribal members are the descendants of Mdewakanton Dakota people who

resided in villages near the banks of the lower Minnesota River.  The SMSC presently

owns more than 2,800 acres of land, all of which are located within or near the original

250-acre reservation established for the SMSC in the 1880s, within Scott County.

Approximately 735 acres of that land are held in trust or reservation status.

Approximately 1,594 acres of SMSC lands are located in the City.  The SMSC owns

almost exactly one-third of the total amount of land capable of development remaining in

the City.

13.    The SMSC currently operates several businesses on tribal lands, including

the highly successful Mystic Lake Casino Hotel.  The Mystic Lake Casino is the Twin

Cities' only casino hotel and one of the largest casinos in the Midwest, offering 3,100 slot

machines, 100 blackjack tables, high-stakes slots and blackjack, bingo, video craps and

roulette, and five restaurants.  The SMSC also operates the Little Six Casino, a second

gaming facility, which features over 600 slot machines, eight table games, and one

restaurant.

14.    In addition to the casino operations, the SMSC has diversified into non-gaming related development.  For example, the SMSC owns and operates the Meadows at Mystic Lake, an 18-hole championship golf course, recently named by *Golf Digest* as one of the top ten new golf courses in the country.  The SMSC owns and operates the Dakotah! Sport and Fitness club; Playworks, a children's play facility; Dakotah Meadows RV Park; two Shakopee Dakota Convenience Stores, which sell gasoline and sundries; Dakotah Meadows Mini-Storage; and the Mystic Lake Store at Mall Of America.

15.    The SMSC's gaming revenues and other business ventures have allowed SMSC to develop a strong and effective economic and governmental tribal infrastructure. The SMSC offers numerous services to its members, including a health and dental clinic, employee assistance and mental health programs, and children and family services assistance.  The SMSC also supports education, offering higher education grants to qualified tribal members.

16.    In addition to the extensive governmental services the SMSC offers its members, the SMSC pays tribal members per capita payments from revenues generated by the SMSC's gaming operations.  Published reports suggest that the annual per capita payments exceed $1 million per tribal member.

17.    The SMSC's status and rights to its 250-acre reservation is being challenged in *Wolfchild v. United States*, No. 03-2684L (Fed. Cl. filed Nov. 18, 2003).  In 2004, a federal judge ruled in favor of 1,200 Minnesota Mdewakanton Dakota who claim, among other things, that land now comprising the SMSC's reservation was to be held in trust for the Loyalist Mdewakanton.  The court ruled that the government violated the trust when, in 1980, it transferred control of the property to the SMSC, and to two other

Communities in Minnesota. A ruling from the Court of Federal Claims brought the

Shakopee Mdewakanton Sioux Community and the Prairie Island Sioux Community into

the lawsuit because they acted as agents of the federal government in the management of

the land.

**D.     THE SMSC TRUST LAND REQUESTS**

       **The First Attempt to Have Land Acquired In Trust**

    18.     On May 1, 1995, the SMSC filed a fee-to-trust request for 593 acres of

land, all of which is included in the current request being challenged. The SMSC

indicated that it needed trust status for the land for housing and economic development

purposes.

    19.     BIA failed to provide notice of, and opportunity to comment on, the

requested acquisition to the City, as is required under 25 C.F.R. § 151.10. Upon

discovery of the proposed acquisition, the City filed a request with the Bureau of Indian

Affairs (BIA) for an extension to comment on the SMSC's application. The BIA refused

to extend the comment period to allow the City to comment. Nor did BIA prepare any

environmental review of the proposed acquisition.

    20.     On June 9, 1995, the City challenged the trust acquisition in the United

States District Court – District of Minnesota for BIA's failure to provide notice of the

acquisition to jurisdictional governments, as is required under 25 C.F.R. Part 151, and

BIA's failure to comply with NEPA. *City of Shakopee v. United States of America et al.*,

No. 95-00373 (D. Minn. filed June 9, 1995, terminated Apr. 30, 1997). The City

received a preliminary injunction preventing BIA from transferring the land into trust,

which prompted BIA to: 1) provide notice of the application to affected local

governments; 2) allow for a 30-day comment period; and 3) determine that an environmental assessment was required before considering the trust acquisition. The SMSC, the City, Scott County, Minnesota (the county in which the City is located), and the State of Minnesota met several times during the next twenty months, attempting to resolve differences between the parties regarding the proposed acquisition. SMSC withdrew its application on February 28, 1997.

### The Second Attempt to Have Land Acquired In Trust

21.     On September 2, 1997, the SMSC submitted a second fee-to-trust application for the same land. The 1997 application indicated that the land was to be used primarily for light industrial and retail purposes, as well as green space, drainage, single-family and multi-family residential purposes. The City, Scott County (County), and the State of Minnesota opposed the application, primarily on the basis that the overwhelming success of the SMSC's gaming and entertainment enterprises had ensured SMSC's continued existence and financial prosperity, such that trust status for additional land was not needed. The City and County repeatedly attempted to resolve the parties' differences, but the SMSC refused to discuss any agreement until after the land was transferred in trust.

22.     On October 7, 1998, BIA issued a notice of decision declining the SMSC's request, finding that the SMSC had failed to demonstrate tribal need to have the land placed in trust. In denying the request, BIA stated that it

> did not believe that [the SMSC] has shown that placing land in trust is either necessary or essential to accomplishing its goals. The Community's business acumen has made it, by any standards, one of the most successful Indian enterprises in the entire United States. No reason has been shown to believe that it will not continue as it has, as an extremely successful business competitor, particularly in light of the fact of its diversification plans.

BIA also stated that:

> No meaningful charge is made that its governmental integrity will suffer if these additional lands are not taken in trust for it. We are unpersuaded that the Community needs additional trust land to continue its economic vitality or for the protection of its governmental integrity. The Community distributes a substantial amount of its tribal income directly to its tribal members in the form of per capita payments in an amount which grossly exceeds the levels of income used by any government to determine needs assistance for its constituents.

BIA specifically addressed the SMSC's claim that it needed land for residential purposes.

23.    The SMSC did not appeal BIA's October 7, 1998, denial to the Interior Board of Indian Appeals. The decision therefore became final.

### The Third Attempt to Have Land Acquired In Trust

24.    On February 24, 2000, the SMSC filed its third fee-to-trust request for the same land. The February 24, 2000, request includes the original 593 acres of land involved in the 1995 and 1997 fee-to-trust requests, and three other parcels expanding the total acreage to 776.41 acres of land. Of this total, 672 acres are located in the City of Shakopee. The stated purpose of the third proposed acquisition is to provide land for residential housing for tribal members and government uses, uses identified in the 1997 application and found insufficient by the BIA in 1998.

25.    On June 14, 2000, the SMSC asked that its trust request be reviewed by BIA Central Office rather than by the Regional Office. The SMSC stated in its request that because of the Regional Director's 1998 denial of the previous application, review by the Area Director would be "superfluous."

26.    On September 15, 2000, the Assistant Secretary for Indian Affairs accepted review of the SMSC's application. Notice of the SMSC's application was

issued on October 12, 2000. The City and County submitted comments on December 20, 2000, to which the SMSC responded on January 4, 2001. The City and County filed replies to the SMSC's response with BIA on January 26, 2001 and met with BIA in Washington, D.C. on January 27-29, 2001. In this meeting, the City and County expressed their desire to work cooperatively with the SMSC to reach a consensus determination. The SMSC again refused to engage in meaningful discussion.

27.    On March 26, 2001, BIA Central Office evaluated the SMSC's February 24, 2000 application, identifying a number of deficiencies in the application. The deficiencies included, but were not limited to, an out-of-date environmental site assessment; lack of cooperative agreements explaining how jurisdictional issues and matters pertaining to health, safety, zoning, building codes, police and fire protections, etc. would be addressed between the SMSC and the local governments; and lack of documentation evidencing support of the local community or governments. The SMSC responded to BIA on April 5, 2001, stating that while it considered the 2000 application "fully developed," it would meet the requests of BIA on or before May 15, 2001. The SMSC failed to respond fully to the deficiencies identified in the March 26, 2001, letter.

28.    BIA headquarters transferred the application back to the Regional Office sometime later in 2001.

29.    Between May 2002 and September 19, 2005, the City and County were unaware that BIA was actively reviewing the 2000 application and had worked with the SMSC on the SMSC's EA. On September 19, 2005, however, the BIA Regional Office released an EA of the SMSC's proposed development for a 30-day comment period. The EA was not made available to the City and County until September 22, 2005. The City

and County requested a 60-day extension of the comment period for the EA.  BIA extended the comment period fifteen (15) calendar days.

30.     On October 12, 2005, the City and County met with the new BIA Regional Director, Mr. Terry Virden, to discuss the SMSC's fee-to-trust application. Although the environmental review process had not been completed, and comments on the EA and the trust request had not been submitted, Mr. Virden informed the local governments during that meeting that he disagreed with his predecessor's 1998 decision denying the SMSC's application.

31.     On October 31, 2005, the City and County submitted comments on the EA.  The local governments contended that an environmental impact statement (EIS) was needed because the action was a major federal action significantly impacting the quality of the human environment.  The City and County also objected that they were not included as cooperating agencies in the preparation of the EA.  Further, the City and County contended that even if an EA were sufficient, the EA prepared in this case failed to assess adequately the environmental impacts of the proposed action, did not account for the cumulative impacts of the proposed action, and did not assess the impacts of reasonably foreseeable tribal development.

32.     On November 6, 2005, BIA provided renewed notice of the February 24, 2000, fee-to-trust application under 25 C.F.R. § 151.10.  BIA provided the local governments with 30 days to comment.  The City and County requested an extension to provide comments on the trust application.  Although BIA granted the State of Minnesota an extension of the comment period until January 4, 2006, it refused to give additional time to the local governments to prepare comments.

33.     On December 16, 2005, the City and County met with Associate Deputy Secretary James Cason.  After explaining the BIA Regional Office's response to the request of the local governments, Mr. Cason invited the local governments to file a request for an extension to file supplemental comments by the extended deadline granted to the State.

34.     The City and County submitted a request for an extension on December 20, 2005, as suggested by Mr. Cason.  Although the local governments did not receive a response, they submitted comments January 4, 2006.  Throughout the period, the City and County continued their efforts to meet with the SMSC.  The SMSC, however, refused to engage in any discussion regarding a possible agreement.

35.     In January 2006, the SMSC responded to the comments of the State and local governments.  The local governments' January 4, 2006, comments, however, were omitted from the record on which the SMSC based its response.

36.     On March 27, 2006, Deputy Assistant Secretary Michael Olson sent the local governments a letter denying their request to submit comments on January 4, 2006, stating that Executive Secretary's Office did not receive the request for an extension until January 6, 2006, two days after the comment period had closed.  The local governments immediately contacted BIA regarding their January 4, 2006, comments regarding the omission.  After several meetings regarding the matter, the January 4, 2006, comments were included as part of the administrative record.

37.     On July 7, 2006, the Acting Regional Director for the Midwest Regional Office issued a notice of decision accepting the 776.41 acres of land in trust on behalf of the SMSC.

38.    At that time, however, the Central Office was also considering the SMSC's application, in light of the policy issues the application raised.  On July 14, 2006, then-Director of BIA William P. Ragsdale issued a memorandum to the Midwest Regional Director withdrawing the July 7, 2006 decision to allow time for review by the Central Office.  That same day, the Regional Office withdrew the decision, indicating that the Central Office would make the final decision on the February 24, 2000 trust request.

39.    Throughout this period, the City and County continued to pursue a negotiated resolution of the differences between the parties.  In fact, throughout the entire time frame identified in this complaint, the local governments repeatedly attempted to work with the Tribal leaders to resolve the differences between the two parties, but the SMSC was unwilling to discuss any agreement for trust acquisition purposes.  Of primary concern to the local governments was establishing an agreement that required timely notice of future trust acquisitions to enable the local governments to plan effectively for future growth and the ability to participate as a cooperating agency in any environmental review for future trust acquisitions.  The SMSC has refused all such requests.

40.    The City and County also asked BIA during a meeting with Mr. Artman on May 4, 2007, to appoint a mediator to facilitate an agreement between the parties.  Mr. Artman expressed support for intergovernmental agreements, but he declined to assist the local governments in negotiating an agreement with the SMSC.

41.    On June 7, 2007, the Assistant Secretary for Indian Affairs issued a Notice of Decision to accept approximately 752.41 acres of land in trust for the SMSC.  On July 24, 2007, the City and County again met with Assistant Secretary Artman to seek

clarification of the decision by BIA in a manner that could resolve the conflict. BIA did not respond to this request. Notice of that decision was published in the Federal Register on September 27, 2007.

42.     Of the approximately 4,774 acres of developable land remaining in the City, the SMSC now controls fully one-third, or 1,594 acres. Of the 1,594 acres, the SMSC owns about 1,400 acres in fee, and the remaining 194 acres are held in trust status. In an October 9 meeting with the City, the SMSC stated that they would continue to purchase land that is contiguous to the Tribe's current land holdings. In an October 12 meeting with the County, the SMSC informed the County that the SMSC will continue to buy land "contiguous" to current lands and that it will continue to file for trust land status on all lands they own. The SMSC also informed the County that it will make trust land application in an incremental manner. The SMSC finally stated that it does not plan on entering into any agreements with the local governments on trust land requests prior to land going into trust. In confirmation of this intent, the Tribe purchased 320 acres of land on October 5, 2007, of critical importance to City governmental purposes without prior notice to the affected local governments. The City notified counsel for BIA of these, and other, recent land acquisitions by the Tribe by letter of October 29, 2007.

## COUNT I
### (Administrative Procedure Act and Indian Reorganization Act Violation)

43.     Plaintiffs incorporate paragraphs 1 through 42 as though fully set forth herein.

44.     The legislative purpose of the IRA, 25 U.S.C. § 465, is to give the Secretary authority to take lands into trust for a tribe that is landless, in need of land to

become self-sufficient, or in other need of federal assistance. The IRA does not authorize the Secretary to take land into trust where a tribe cannot demonstrate that trust land is needed to achieve the purposes of the IRA.

45.    The Secretary's consideration of applications for the acquisition of land in trust status for Indian tribes is governed by 25 C.F.R. Part 151. In order to comply with Part 151, the regulations require the Secretary to find that the requested land is needed by the Tribe. 25 C.F.R. §151.10(b).

46.    In 1998, the Regional Office of BIA declined to take this land in trust because the SMSC could not demonstrate need for more trust land. One of the stated purposes of the 1997 application was to provide tribal housing to SMSC members. The Regional Office determined that members of the SMSC received large annual per capita payments and for that and other reasons, additional trust land was not warranted. The SMSC did not appeal that decision.

47.    Defendant's 2007 decision to take land in trust for the SMSC directly conflicts with BIA's earlier final decision, which was not appealed or withdrawn by BIA. Like the 1997 application, the purpose of the 2000 application is to acquire land for residential purposes.

48.    The Assistant Secretary's 2007 decision is outside the purposes of the IRA, is ultra vires, and requires a material change in the Department's interpretation of the IRA and implementing regulations.

49.    The Secretary's decision to accept the 776.41 acres is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law within the meaning of the APA and the IRA.

## COUNT II
**(Administrative Procedure Act and National Environmental Policy Act Violation)**

50.    Plaintiffs incorporate paragraphs 1 through 49 as though fully set forth herein.

51.    The EA failed to take into account the effects of the proposed action, particularly cumulative and indirect effects.  NEPA regulations require an agency to consider cumulative and indirect impacts in determining whether an EIS is required.  40 C.F.R. §§ 1508.25, 1508.27.  BIA, however, did not take into account the cumulative and indirect impacts of the SMSC's past, present and reasonably foreseeable future actions. Had it done so, it would have reasonably determined that an EIS was required.

52.    The Department failed to prepare an EIS on the impacts of this trust acquisition.

53.    BIA has violated NEPA, 42 U.S.C. 4321-4347, and NEPA regulations, 40 CFR 1500-1508, 43 Fed. Reg. 55990 (Nov. 28, 1978).  On the basis of a defective EA, BIA made a "finding of no significant impact" (FONSI) resulting in it not preparing an EIS under NEPA.  The Secretary's decision is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law within the meaning of the APA and NEPA.

## COUNT III
**(Administrative Procedure Act and National Environmental Policy Act Violation)**

54.    Plaintiffs incorporate paragraphs 1 through 53 as though fully set forth herein.

55.    NEPA regulations require an agency to provide public notice of the availability of a FONSI.  40 C.F.R. § 1501.4(e).  The manner of notice is prescribed in 40

C.F.R. § 1506.6, which includes: notice to State and area-wide clearinghouses; following the affected State's public notice procedures for comparable actions; publication in local newspapers (in papers of general circulation rather than legal papers); notice through other local media; notice to potentially interested community organizations including small business associations; publication in newsletters that may be expected to reach potentially interested persons; direct mailing to owners and occupants of nearby or affected property; and posting of notice on and off site in the area where the action is to be located.

56.     Although both the Regional Director's and the Assistant Secretary's decisions indicated that a FONSI has been prepared, neither decision indicated that a FONSI was available for review.  Further, no FONSI was provided in response to the local governments' April 9, 2007, Freedom of Information Act request.  The Assistant Secretary's decision refers only to a July 7, 2006, FONSI, which was part of the decision withdrawn from the Central Office on July 13, 2006.

57.     BIA has violated NEPA, 42 U.S.C. 4321-4347 and NEPA regulations, 40 CFR 1500-1508, 43 Fed. Reg. 55990 (Nov. 28, 1978) by failing to release a FONSI for the proposed action.  The Secretary's decision is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law within the meaning of the APA and NEPA.

WHEREFORE, Plaintiffs Scott County and City of Shakopee request the following

relief:

a.      An order permanently enjoining the Secretary of the Department of Interior from

taking the 776.41 acres of land held in fee by the SMSC into trust for the benefit of the

SMSC;

b.      An order declaring that the 776.41 acres of land may not be taken into trust for the

benefit of the SMSC; and

c.      Such other relief as this Court deems just and reasonable.


                                        Respectfully submitted,


                                        Benjamin S. Sharp – Bar # 211623
                                        Donald C. Baur – Bar # 393621
                                        Jena A. MacLean – Bar # 479910
                                        PERKINS COIE LLP
                                        607 Fourteenth Street, N.W.
                                        Washington, D.C.  20005-2011
                                        (202) 628-6600

                                        *Of Counsel*:
                                        James J. Thomson
                                        Kennedy & Graven
                                        470 U.S. Bank Plaza
                                        200 South Sixth Street
                                        Minneapolis, MN 55402
                                        (612) 337-9209

                                        Attorneys for Plaintiff City of
                                        Shakopee, Minnesota

Dated:  October 29, 2007

# ATTACHMENT F

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS**<br><br>CITY OF SHAKOPEE, MINNESOTA<br><br>**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888<br>(EXCEPT IN U.S. PLAINTIFF CASES)<br><br>Scott County, MN | **DEFENDANTS**<br>THE UNITED STATES<br>DIRK KEMPTHORNE, as Secretary of the Interior<br>CARL J. ARTMAN, as Asst. Secretary-Indian Affairs<br>COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>TRACT OF LAND INVOLVED |
| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>PERKINS COIE LLP<br>607 Fourteenth Street, NW<br>Washington, DC  20005   202-628-6600 | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
　 Plaintiff

☐ 3 Federal Question
　 (U.S. Government Not a Party)

☒ 2 U.S. Government
　 Defendant

☐ 4 Diversity
　 (Indicate Citizenship of Parties
　 in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place<br>of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place<br>of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| ☐ **A.** *Antitrust* | ☐ **B.** *Personal Injury/<br>Malpractice* | ☒ **C.** *Administrative Agency<br>Review* | ☐ **D.** *Temporary Restraining<br>Order/Preliminary<br>Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☒ 890 Other Statutory Actions (If<br>　 Administrative Agency is Involved) | Any nature of suit from any category may<br>be selected for this category of case<br>assignment.<br><br>*(If Antitrust, then A governs)* |

## ☐ E.  *General Civil (Other)* OR ☐ F.  *Pro Se General Civil*

| | | | |
|---|---|---|---|
| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or<br>　 defendant<br>☐ 871 IRS-Third Party 26<br>　 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of<br>　 Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational<br>　 Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC<br>Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt<br>　 Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/<br>　 Exchange<br>☐ 875 Customer Challenge 12 USC<br>　 3410<br>☐ 900 Appeal of fee determination<br>　 under equal access to Justice<br>☐ 950 Constitutionality of State<br>　 Statutes<br>☐ 890 Other Statutory Actions (if not<br>　 administrative agency review or<br>　 Privacy Act |

| ☐ **G.** *Habeas Corpus/* 2255 | ☐ **H.** *Employment Discrimination* | ☐ **I.** *FOIA/PRIVACY ACT* | ☐ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530** Habeas Corpus-General<br>☐ **510** Motion/Vacate Sentence | ☐ **442** Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **895** Freedom of Information Act<br>☐ **890** Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ **152** Recovery of Defaulted Student<br>Loans (excluding veterans) |
| ☐ **K.** *Labor/ERISA* *(non-employment)* | ☐ **L.** *Other Civil Rights* *(non-employment)* | ☐ **M.** *Contract* | ☐ **N.** *Three-Judge Court* |
| ☐ **710** Fair Labor Standards Act<br>☐ **720** Labor/Mgmt. Relations<br>☐ **730** Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ **740** Labor Railway Act<br>☐ **790** Other Labor Litigation<br>☐ **791** Empl. Ret. Inc. Security Act | ☐ **441** Voting (if not Voting Rights<br>Act)<br>☐ **443** Housing/Accommodations<br>☐ **444** Welfare<br>☐ **440** Other Civil Rights<br>☐ **445** American w/Disabilities-<br>Employment<br>☐ **446** Americans w/Disabilities-<br>Other | ☐ **110** Insurance<br>☐ **120** Marine<br>☐ **130** Miller Act<br>☐ **140** Negotiable Instrument<br>☐ **150** Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ **153** Recovery of Overpayment of<br>Veteran's Benefits<br>☐ **160** Stockholder's Suits<br>☐ **190** Other Contracts<br>☐ **195** Contract Product Liability<br>☐ **196** Franchise | ☐ **441** Civil Rights-Voting (if Voting<br>Rights Act) |

**V. ORIGIN**

☒ **1** Original
Proceeding  ☐ **2** Removed
from State
Court  ☐ **3** Remanded from
Appellate Court  ☐ **4** Reinstated
or Reopened  ☐ **5** Transferred from
another district
(specify)  ☐ **6** Multi district
Litigation  ☐ **7** Appeal to
District Judge
from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

25 U.S.C. § 465 (IRA); 25 C.F.R. Part 151; 5 U.S.C. §§ 701-706 (APA); 42 U.S.C. §§ 4321-4347 (NEPA):  APA arbitrary and capricious decision-making under IRA and NEPA.

**VII. REQUESTED IN**
**COMPLAINT**  CHECK IF THIS IS A CLASS
☐     ACTION UNDER F.R.C.P. 23  **DEMAND $**    Check YES only if demanded in complaint
**JURY DEMAND:** ☐ YES    ☒ NO

**VIII. RELATED CASE(S)**
**IF ANY**  (See instruction)  ☐ YES  ☒ NO    If yes, please complete related case form.

DATE  10/29/07    SIGNATURE OF ATTORNEY OF RECORD  *Benjamin S. Sharp/s*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  Listed below are tips for completing the civil cover sheet.  These tips coincide with the Roman Numerals on the Cover Sheet.

    I.       COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

    III.     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

    IV.     CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint.  You may select only one category.  You must also select one corresponding nature of suit found under the category of case.

    VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

    VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.