IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CITY OF SHAKOPEE, MINNESOTA, 129 S. Holmes St., Shakopee, Minnesota 55379<br><br>*Plaintiff,*<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>DIRK KEMPTHORNE, in his official capacity as SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, 1849 C. Street, N.W., Room 6156, Washington, D.C., 20240<br><br>and<br><br>CARL J. ARTMAN, in his official capacity as ASSISTANT SECRETARY FOR INDIAN AFFAIRS, UNITED STATES DEPARTMENT OF THE INTERIOR, 1849 C. Street, N.W., Room 4160, Washington, D.C., 20240<br><br>*Defendants.* | CIVIL ACTION NO. 1:07-cv-01950-RMU |

**FIRST AMENDED COMPLAINT**

This action is based on federal laws governing the acquisition of land to be held in trust by the United States for Indian tribes and the environmental review that is required for such decisions. Plaintiff is the City of Shakopee, Minnesota (City). This municipal government seeks declaratory and injunctive relief prohibiting the Secretary of the United States Department of the Interior from taking land within the City in trust for the Shakopee Mdewakanton Sioux (Dakota) Community (SMSC).

The trust acquisition of the SMSC's requested land would result in the loss of the City's planning, zoning, and environmental regulatory controls over the land. Acquisition would also diminish the City's tax base at a time when governmental burdens are significantly increasing as a result of extensive and rapid regional growth which has resulted in the City's becoming the fastest growing city in the Minneapolis-St. Paul region over the last six years. Scott County, Minnesota (County), the county in which the City is located, is now one of fastest-growing counties in the country. If the land is taken into trust, the City will be unable to establish and implement well-developed land use controls and plans responsive to that growth. The Department's decision will disadvantage the City financially, result in adverse impacts on the environment, and harm the City's ability to plan for and accommodate future regional development. These harms will be further hampered by the SMSC's continuing trust land requests. Injunctive and declaratory relief is necessary to prevent harm to the City as a result of this proposed acquisition.

## I.     THE PARTIES

1. Plaintiff the City of Shakopee is a municipal corporation organized and existing under the laws of the State of Minnesota. The City provides its residents with municipal services, such as parks and recreation programs, public safety, sanitary sewer, and municipal water. In addition to providing those services, the City is obligated under Minnesota law to regulate and control the use of land in the City. The City has regulatory and taxation jurisdiction over most of the land subject to the proposed trust acquisition.

2. Defendant the United States serves as trustee for Indian tribes recognized under federal law, including the SMSC. The United States currently holds lands within the boundaries of the City in trust for the SMSC.

3. Defendant Dirk Kempthorne, Secretary of the Interior (Secretary), operates, supervises, and manages Indian affairs, including acquiring land in trust pursuant to section 5 of the Indian Reorganization Act, 25 U.S.C. § 465 (IRA), and IRA implementing regulations, 25 C.F.R. Part 151. The Secretary is sued in his official capacity.

4. Defendant Carl J. Artman, Assistant Secretary for Indian Affairs of the Department of the Interior (Assistant Secretary), shares responsibility with the Secretary for operating, supervising, and managing Indian affairs, including acquiring land in trust under the IRA. The Assistant Secretary is sued in his official capacity.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question), 25 U.S.C. § 465 (IRA), 42 U.S.C. §§ 4321-4347 (the National Environmental Policy Act, or NEPA), and 5 U.S.C. §§ 701-706 (Administrative Procedure Act, or APA). Plaintiffs seek declaratory relief under 28 U.S.C. § 2201 and injunctive relief under 28 U.S.C. § 2202.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## III. BACKGROUND

### A. TRIBAL TRUST LAND

7. In 1934, Congress passed the IRA. 25 U.S.C. § 461 *et seq.* "The intent and purpose of the Reorganization Act was 'to rehabilitate the Indian's economic life and to give him a chance to develop the initiative destroyed by a century of oppression and

paternalism.'" *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 152 (1973) (quoting H.R. Rep. No. 1804, 73d Cong., 2d Sess., at 6 (1934)).

8.   To that end, Congress enacted Section 5 of the Act "[t]o meet the needs of landless Indians . . . whose land holdings are insufficient for self-support . . . ." S. Rep. No. 1080, 73d Cong., 2d Sess. 1 (1934). Section 5 authorizes the Secretary of the Interior to acquire land in trust for the benefit of Indians and Indian tribes. 25 U.S.C. § 465. When land is acquired in trust, it becomes exempt from state and local taxation and regulatory controls, including environmental and land use controls.

9.   The Secretary has promulgated regulations for implementing Section 5 of the IRA. 25 C.F.R. Part 151. Section 151.10 sets forth standards to be considered in evaluating trust acquisition requests. Among those factors are: (1) statutory limitations on the Secretary's authority to take land in trust for the tribe involved; (2) the need of the tribe for additional land; (3) the purposes for which the land will be used; (4) the impact on the state and its political subdivisions resulting from the removal of the land from the tax rolls; and (5) jurisdictional problems and potential conflicts of land use which may arise. 25 C.F.R. § 151.10 (a), (b), (c), (e), and (f).

**B.   NEPA**

10.   Under NEPA and its implementing regulations, 40 C.F.R. Parts 1500-1508, agencies are required to take a "hard look" at the environmental impacts of proposed actions, including the cumulative impacts associated with a proposed action. 40 C.F.R. §§ 1501.2, 1508.7. NEPA prohibits agencies from breaking down larger actions and related actions into smaller pieces, because such segmentation improperly minimizes the impacts of the proposed

action, constrains the consideration of alternatives, and skews agency decision-making in favor of proposed actions. 40 C.F.R. §§ 1508.7, 1508.25.

11.    For review of major federal actions significantly affecting the human environment, NEPA requires preparation of an environmental impact statement (EIS). 42 U.S.C. § 4332(2)(C). An environmental assessment (EA) may be used to determine whether an EIS is needed. 40 C.F.R. §§ 1501.4(a), (b). An EA must, itself, provide an adequate assessment of cumulative effects. 40 C.F.R. § 1508.25. If the agency determines, after preparing an EA, that an EIS is not needed, it issues a finding of no significant impact (FONSI), which becomes the basis for final agency action. 40 C.F.R. § 1501.4(e). The agency must make the FONSI available to the public. 40 C.F.R. § 1501.4(e)(1).

### C.    THE SHAKOPEE MDEWAKANTON SIOUX COMMUNITY (SMSC)

12.    The SMSC is a federally-recognized Indian tribe with approximately 392 members. Tribal members are the descendants of Mdewakanton Dakota people who resided in villages near the banks of the lower Minnesota River. The SMSC presently owns more than 2,800 acres of land, all of which are located within or near the original 250-acre reservation established for the SMSC in the 1880s, within Scott County. Approximately 735 acres of that land are held in trust or reservation status. Approximately 1,594 acres of SMSC lands are located in the City. The SMSC owns almost exactly one-third of the total amount of land capable of development remaining in the City.

13.    The SMSC currently operates several businesses on tribal lands, including the highly successful Mystic Lake Casino Hotel. The Mystic Lake Casino is the Twin Cities' only casino hotel and one of the largest casinos in the Midwest, offering 3,100 slot machines, 100 blackjack tables, high-stakes slots and blackjack, bingo, video craps and roulette, and

five restaurants. The SMSC also operates the Little Six Casino, a second gaming facility, which features over 600 slot machines, eight table games, and one restaurant.

14. In addition to the casino operations, the SMSC has diversified into non-gaming related development. For example, the SMSC owns and operates the Meadows at Mystic Lake, an 18-hole championship golf course, recently named by *Golf Digest* as one of the top ten new golf courses in the country. The SMSC owns and operates: Dakotah! Sport and Fitness club; Playworks, a children's play facility; Dakotah Meadows RV Park; two Shakopee Dakota Convenience Stores, which sell gasoline and sundries; Dakotah Meadows Mini-Storage; and the Mystic Lake Store at Mall Of America.

15. The SMSC's gaming revenues and other business ventures have allowed SMSC to develop a strong and effective economic and governmental tribal infrastructure. The SMSC offers numerous services to its members, including a health and dental clinic, employee assistance and mental health programs, and children and family services assistance. The SMSC also supports education, offering higher education grants to qualified tribal members.

16. In addition to the extensive governmental services the SMSC offers its members, the SMSC pays tribal members per capita payments from revenues generated by the SMSC's gaming operations. Published reports suggest that the annual per capita payments exceed $1 million per tribal member.

17. The SMSC's status and rights to its 250-acre reservation are being challenged in *Wolfchild v. United States*, No. 03-2684L (Fed. Cl. filed Nov. 18, 2003). In 2004, a federal judge ruled in favor of 1,200 Minnesota Mdewakanton Dakota who claim, among other things, that land now comprising the SMSC's reservation was to be held in trust for the

Loyalist Mdewakanton. The court ruled that the government violated the trust when, in 1980, it transferred control of the property to the SMSC, and to two other Communities in Minnesota. A ruling from the Court of Federal Claims brought the SMSC into the lawsuit because it acted as an agent of the federal government in the management of the land.

**D.    THE SMSC TRUST LAND REQUESTS**

**The First Attempt to Have Land Acquired In Trust**

18.    On May 1, 1995, the SMSC filed a fee-to-trust request for 593 acres of land, all of which is included in the current request being challenged. The SMSC indicated that it needed trust status for the land for housing and economic development purposes.

19.    BIA failed to provide notice of, and opportunity to comment on, the requested acquisition to the City, as is required under 25 C.F.R. § 151.10. Upon discovery of the proposed acquisition, the City filed a request with the Bureau of Indian Affairs (BIA) for an extension to comment on the SMSC's application. The BIA refused to extend the comment period to allow the City to comment. Nor did BIA prepare any environmental review of the proposed acquisition.

20.    On June 9, 1995, the City challenged the trust acquisition in the United States District Court – District of Minnesota for BIA's failure to provide notice of the acquisition to jurisdictional governments, and BIA's failure to comply with NEPA. *City of Shakopee v. United States of America et al.*, No. 95-00373 (D. Minn. filed June 9, 1995, terminated Apr. 30, 1997). The City received a preliminary injunction preventing BIA from transferring the land into trust, which prompted BIA to: 1) provide notice of the application to affected local governments; 2) allow for a 30-day comment period; and 3) determine that an EA was required before considering the trust acquisition. The SMSC, the City, Scott County, and the

State of Minnesota met several times during the next twenty months, attempting to resolve differences between the parties regarding the proposed acquisition. The SMSC withdrew its application on February 28, 1997.

### The Second Attempt to Have Land Acquired In Trust

21. On September 2, 1997, the SMSC submitted a second fee-to-trust application for the same land. The 1997 application indicated that the land was to be used primarily for light industrial and retail purposes, as well as green space, drainage, single-family and multi-family residential purposes. The City, County, and the State of Minnesota opposed the application, primarily on the basis that the overwhelming success of the SMSC's gaming and entertainment enterprises had ensured SMSC's continued existence and financial prosperity, such that trust status for additional land was not needed. The City and County repeatedly attempted to resolve the parties' differences, but the SMSC refused to discuss any agreement until after the land was transferred in trust.

22. On October 7, 1998, BIA issued a notice of decision declining the SMSC's request, finding that the SMSC had failed to demonstrate tribal need to have the land placed in trust. In denying the request, BIA stated that it

> did not believe that [the SMSC] has shown that placing land in trust is either necessary or essential to accomplishing its goals. The Community's business acumen has made it, by any standards, one of the most successful Indian enterprises in the entire United States. No reason has been shown to believe that it will not continue as it has, as an extremely successful business competitor, particularly in light of the fact of its diversification plans.

BIA also stated that:

> No meaningful charge is made that its governmental integrity will suffer if these additional lands are not taken in trust for it. We are unpersuaded that the Community needs additional trust land to continue its economic vitality or for the protection of its governmental integrity. The Community distributes a substantial amount of its tribal income directly to its tribal members in the form of per capita

payments in an amount which grossly exceeds the levels of income used by any government to determine needs assistance for its constituents.

BIA specifically addressed the SMSC's claim that it needed land for residential purposes.

23.     The SMSC did not appeal BIA's October 7, 1998, denial to the Interior Board of Indian Appeals. The decision therefore became final.

### The Third Attempt to Have Land Acquired In Trust

24.     On February 24, 2000, the SMSC filed its third fee-to-trust request for the same land. The February 24, 2000, request includes the original 593 acres of land involved in the 1995 and 1997 fee-to-trust requests and three other parcels, expanding the total acreage to 776.41 acres of land. Of this total, 672 acres are located in the City. The stated purpose of the third proposed acquisition is to provide land for residential housing for tribal members and government uses, uses identified in the 1997 application and found insufficient by the BIA in 1998.

25.     On June 14, 2000, the SMSC asked that its trust request be reviewed by BIA Central Office rather than by the Regional Office. The SMSC stated that because of the Regional Director's 1998 denial of the previous application, review by the Area Director would be "superfluous."

26.     On September 15, 2000, the Assistant Secretary for Indian Affairs accepted review of the SMSC's application. Notice of the SMSC's application was issued on October 12, 2000. The City submitted comments with the County on December 20, 2000, to which the SMSC responded on January 4, 2001. The City and County filed replies with BIA on January 26, 2001. The local governments met with BIA in Washington, D.C. on January 27-29, 2001, and expressed their desire to work cooperatively with the SMSC to reach a consensus determination. The SMSC refused to engage in meaningful discussion.

27.  On March 26, 2001, BIA Central Office identified a number of deficiencies in the SMSC's February 24, 2000 application. The deficiencies included, but were not limited to: an out-of-date environmental site assessment; lack of cooperative agreements explaining how jurisdictional issues and matters pertaining to health, safety, zoning, building codes, police and fire protections, etc. would be addressed between the SMSC and the local governments; and lack of documentation evidencing support of the local community or governments. The SMSC responded to BIA on April 5, 2001, stating that while it considered the 2000 application "fully developed," it would meet the requests of BIA on or before May 15, 2001. The SMSC failed to respond fully to the deficiencies identified in the March 26, 2001, letter.

28.  BIA headquarters transferred the application back to the Regional Office sometime later in 2001.

29.  Between May 2002 and September 19, 2005, the City was unaware that BIA was actively reviewing the 2000 application and was working with the SMSC on the SMSC's EA. On September 19, 2005, however, the BIA Regional Office released an EA of the SMSC's proposed development for a 30-day comment period. The EA was not made available to the City until September 22, 2005. The City requested a 60-day extension of the comment period for the EA. BIA extended the comment period fifteen (15) calendar days.

30.  On October 12, 2005, the local governments met with the new BIA Regional Director, Mr. Terrance Virden, to discuss the SMSC's fee-to-trust application. Although the environmental review process had not been completed, and comments on the EA and the trust request had not been submitted, Mr. Virden informed the local governments during that

meeting that he disagreed with his predecessor's 1998 decision denying the SMSC's application.

31. On October 31, 2005, the local governments submitted comments on the EA. The local governments contended that an EIS was needed because the action was a major federal action significantly impacting the quality of the human environment. They also objected that they were not included as cooperating agencies in the preparation of the EA. Further, the City and County contended that even if an EA were sufficient, the EA failed to assess adequately the environmental impacts of the proposed action, did not account for cumulative impacts, and did not assess the impacts of reasonably foreseeable tribal development.

32. On November 6, 2005, BIA provided renewed notice of the February 24, 2000, fee-to-trust application. BIA provided the local governments with 30 days to comment. The local governments requested an extension to provide comments on the trust application. Although BIA granted the State of Minnesota an extension of the comment period until January 4, 2006, it refused to give additional time to the local governments.

33. On December 16, 2005, the City and County met with Associate Deputy Secretary James Cason. After explaining the BIA Regional Office's response to their request for an extension, Mr. Cason invited the local governments to file an extension request directly with his office.

34. The local governments submitted the request as suggested by Mr. Cason. Although the local governments did not receive a response, they submitted comments to BIA's Central Office on January 4, 2006. Throughout the period, the local governments

continued their efforts to meet with the SMSC. The SMSC, however, refused to engage in any discussion regarding a possible agreement.

35. In January 2006, the SMSC responded to the comments of the State and local governments. The local governments' January 4, 2006, comments, however, were omitted from the record on which the SMSC based its response.

36. On March 27, 2006, Deputy Assistant Secretary Michael Olson sent the local governments a letter denying their request to submit comments on January 4, 2006, stating that Executive Secretary's Office did not receive the request for an extension until January 6, 2006, two days after the comment period had closed. The local governments immediately contacted BIA regarding their January 4, 2006, comments concerning the omission. After several meetings regarding the matter, the January 4, 2006, comments were included as part of the administrative record.

37. On July 7, 2006, the Acting Regional Director for the Midwest Regional Office issued a notice of decision accepting the 752.41 acres of land in trust on behalf of the SMSC.[1]

38. At that time, however, the Central Office was also considering the SMSC's application, in light of the policy issues the application raised. On July 14, 2006, then-Director of BIA William P. Ragsdale issued a memorandum to the Midwest Regional Director withdrawing the July 7, 2006, decision to allow time for review by the Central Office. That same day, the Regional Office withdrew the decision, indicating that the Central Office would make the final decision on the February 24, 2000, trust request.

---

[1] Although the 2000 application included 776.41 acres, the SMSC deeded a right-of-way to Scott County for improvements to County State Aid Highway 82, reducing the trust request to 752.41 acres.

39. Throughout this period, the local governments continued to pursue a negotiated resolution of the differences between the parties. In fact, throughout the entire time frame identified in this complaint, the local governments repeatedly attempted to work with the SMSC to resolve the differences between the parties, but the SMSC was unwilling to discuss any agreement for trust acquisition purposes. Of primary concern to the local governments was establishing an agreement that required timely notice of future trust acquisitions to enable the local governments to plan effectively for future growth and the ability to participate as a cooperating agency in any environmental review for future trust acquisitions. The SMSC refused the requests.

40. The local governments also asked BIA during a meeting with Mr. Artman on May 4, 2007, to appoint a mediator to facilitate an agreement between the parties. Mr. Artman expressed support for intergovernmental agreements, but he declined to assist the local governments in negotiating an agreement with the SMSC.

41. On June 7, 2007, the Assistant Secretary for Indian Affairs issued a Notice of Decision to accept approximately 752.41 acres of land in trust for the SMSC. On July 24, 2007, counsel for the City and County again met with Assistant Secretary Artman to seek clarification of the decision by BIA in a manner that could resolve the conflict. BIA did not respond to this request. Notice of the Assistant Secretary's decision was published in the Federal Register on September 27, 2007.

42. Of the approximately 4,774 acres of developable land remaining in the City, the SMSC now controls fully one-third, or 1,594 acres. Of the 1,594 acres, the SMSC owns about 1,400 acres in fee, and the remaining 194 acres are held in trust status. In an October 9 meeting with the City, the SMSC stated that it would continue to purchase land that is

contiguous to the SMSC's current land holdings. In an October 12 meeting with the County, the SMSC informed the County that the SMSC will continue to buy land "contiguous" to current lands and that it will continue to file for trust land status on all lands it owns. The SMSC also informed the County that it will file trust land applications in an incremental manner for its fee lands. The SMSC restated its previous position and stated that it does not plan to enter into any agreements with the City on trust land requests prior to land going into trust. On October 5, 2007, in confirmation of this intent, the SMSC purchased 320 acres of land of critical importance to City governmental purposes without prior notice to the affected local governments. The City notified counsel for BIA of these and other recent land acquisitions by the Tribe by letter of October 29, 2007.

## COUNT I
### (Administrative Procedure Act and Indian Reorganization Act Violation)

43.     Plaintiffs incorporate paragraphs 1 through 42 as though fully set forth herein.

44.     The legislative purpose of the IRA, 25 U.S.C. § 465, is to give the Secretary authority to take lands into trust for a tribe that is landless, in need of land to become self-sufficient, or in other need of federal assistance. The IRA does not authorize the Secretary to take land into trust where a tribe cannot demonstrate that trust land is needed to achieve the purposes of the IRA.

45.     The Secretary's consideration of applications for the acquisition of land in trust status for Indian tribes is governed by 25 C.F.R. Part 151. In order to comply with Part 151, the regulations require the Secretary to find that the requested land is needed by the tribe. 25 C.F.R. § 151.10(b).

46. In 1998, the Regional Office of BIA declined to take this land in trust because the SMSC could not demonstrate need for more trust land. One of the stated purposes of the 1997 application was to provide tribal housing to SMSC members. The Regional Office determined that members of the SMSC received large annual per capita payments and for that and other reasons, additional trust land was not warranted. The SMSC did not appeal that decision.

47. Defendant's 2007 decision to take land in trust for the SMSC directly conflicts with BIA's earlier final decision, which was not appealed or withdrawn by BIA. The purpose of the 2000 application is to acquire land for residential purposes, one of the 1997 justifications for trust land denied by BIA.

48. The Assistant Secretary's 2007 decision is outside the purposes of the IRA, is ultra vires, and requires a material change in the Department's interpretation of the IRA and implementing regulations.

49. The Secretary's decision to accept the 752.41 acres is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law within the meaning of the APA and the IRA.

### COUNT II
**(Administrative Procedure Act and National Environmental Policy Act Violation)**

50. Plaintiffs incorporate paragraphs 1 through 49 as though fully set forth herein.

51. The EA failed to take into account the effects of the proposed action, particularly cumulative and indirect effects. NEPA regulations require an agency to consider cumulative and indirect impacts in determining whether an EIS is required. 40 C.F.R. §§ 1508.25, 1508.27. BIA, however, did not take into account the cumulative and indirect

impacts of the SMSC's past, present and reasonably foreseeable future actions. Had it done so, it would have reasonably determined that an EIS was required.

52.    The Department failed to prepare an EIS on the impacts of this trust acquisition.

53.    BIA has violated NEPA, 42 U.S.C. §§ 4321-4347, and NEPA regulations, 40 C.F.R. §§ 1500-1508, 43 Fed. Reg. 55990 (Nov. 28, 1978). On the basis of a defective EA, BIA made a FONSI resulting in it not preparing an EIS under NEPA. The Secretary's decision is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law within the meaning of the APA and NEPA.

## COUNT III
**(Administrative Procedure Act and National Environmental Policy Act Violation)**

54.    Plaintiffs incorporate paragraphs 1 through 53 as though fully set forth herein.

55.    NEPA regulations require an agency to provide public notice of the availability of a FONSI. 40 C.F.R. § 1501.4(e). The manner of notice is prescribed in 40 C.F.R. § 1506.6, which includes: notice to State and area-wide clearinghouses; following the affected State's public notice procedures for comparable actions; publication in local newspapers (in papers of general circulation rather than legal papers); notice through other local media; notice to potentially interested community organizations including small business associations; publication in newsletters that may be expected to reach potentially interested persons; direct mailing to owners and occupants of nearby or affected property; and posting of notice on and off site in the area where the action is to be located.

56.    Although both the Regional Director's and the Assistant Secretary's decisions indicated that a FONSI has been prepared, neither decision indicated that a FONSI was available for review. Further, no FONSI was provided in response to the local governments'

April 9, 2007, Freedom of Information Act request. The Assistant Secretary's decision refers only to a July 7, 2006, FONSI, which was part of the decision withdrawn from the Central Office on July 13, 2006.

57. BIA has violated NEPA, 42 U.S.C. §§ 4321-4347 and NEPA regulations, 40 C.F.R. §§ 1500-1508, 43 Fed. Reg. 55990 (Nov. 28, 1978) by failing to release a FONSI for the proposed action. The Secretary's decision is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law within the meaning of the APA and NEPA.

WHEREFORE, Plaintiff City of Shakopee requests the following relief:

a.   An order permanently enjoining the Secretary of the Department of Interior from taking the 752.41 acres of land held in fee by the SMSC into trust for the benefit of the SMSC;

b.   An order declaring that the 752.41 acres of land may not be taken into trust for the benefit of the SMSC; and

c.   Such other relief as this Court deems just and reasonable.

Respectfully submitted,

*[signature]*

Benjamin S. Sharp – Bar # 211623
Donald C. Baur – Bar # 393621
Jena A. MacLean – Bar # 479910
PERKINS COIE LLP
607 Fourteenth Street, N.W.
Washington, D.C. 20005-2011
(202) 628-6600

*Of Counsel*:
James J. Thomson
Kennedy & Graven
470 U.S. Bank Plaza
200 South Sixth Street
Minneapolis, MN 55402
(612) 337-9209

Attorneys for Plaintiff City of Shakopee, Minnesota

Dated: November 9, 2007

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing **FIRST AMENDED COMPLAINT**, in the matter of *City of Shakopee, Minnesota v. The United States of America et al.*, Civil Action No. 1:07-cv-01950-RMU, were served this 9th day of November, 2007, via Certified Mail, to each of the following:

Dirk Kempthorne
Secretary of the United States Department of the Interior
1849 C. Street, N.W., Room 6156
Washington, D.C. 20240
(202) 208-7351

Carl J. Artman
Assistant Secretary for Indian Affairs
United States Department of the Interior,
1849 C. Street, N.W., Room 4160
Washington, D.C. 20240
(202) 269-4464

Peter D. Keisler
Acting Attorney General
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001
(202) 353-1555

United States Attorney
District of Columbia
Civil Process Office
555 Fourth Street, N.W., 10th Floor
Washington, D.C. 20530
(202) 514-7566

_____
Benjamin S. Sharp – Bar # 211623
Donald C. Baur – Bar # 393621
Jena A. MacLean – Bar # 479910
PERKINS COIE LLP
607 Fourteenth Street, N.W.
Washington, D.C. 20005-2011
(202) 628-6600